UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO 3:17-CV-00554-HBB

DANIEL STEVEN CLAYMON                                                              PLAINTIFF

VS.

ANDREW SAUL, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION[1]                                                  DEFENDANT

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Daniel Steven Claymon ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 20) and Defendant (DN 26) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**, and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 17). By Order entered July 17,

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed.R.Civ.P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

1

2018 (DN 18), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

Plaintiff protectively filed an application for Disability Insurance Benefits on November 4, 2014 (Tr. 16, 163-69). Plaintiff alleged that he became disabled on November 20, 2012, because of a heart problem and degenerative disc disease (Tr. 16, 182). Administrative Law Judge Gloria B. York ("ALJ") conducted a video hearing from Lexington, Kentucky on March 2, 2017 (Tr. 16, 37-39). Plaintiff and her attorney, Ross Ahern, participated from Louisville, Kentucky (Id.). Christopher Rymond, an impartial vocational expert, also testified during the hearing (Id.).

In a decision dated May 23, 2017, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 16-30). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since November 20, 2012, the alleged onset date (Tr. 19). At the second step, the ALJ determined that Plaintiff has the following severe impairments: a history of cardiomyopathy with Class II congestive heart failure status post pacemaker placement; neck and low back pain with degenerative disc disease; and a mild cognitive disorder (Id.). Additionally, the ALJ concluded that Plaintiff's history of hernia repair times two, purported seizure disorder, and alcohol use disorder are "non-severe" impairments (Tr. 19-20). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 20).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity (RFC) to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b) because he can lift

and carry twenty pounds occasionally and ten pounds frequently; stand and walk six hours out of and eight-hour day; sit six hours out of an eight-hour day; and is limited to routine, repetitive tasks which require only occasional interaction with supervisors and coworkers and no interaction with the general public in a job which is not fast paced (Tr. 22). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is unable to perform any of his past relevant work (Tr. 28).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 28-29). The ALJ found that Plaintiff can perform a significant number of jobs that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from November 20, 2012 through the date of the decision (Tr. 30).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 161-62). The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting

Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

4

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

> 1) Is the claimant engaged in substantial gainful activity?
>
> 2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?
>
> 3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?
>
> 4) Does the claimant have the residual functional capacity to return to his or her past relevant work?
>
> 5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

Plaintiff challenges Finding No. 5 by arguing the RFC determination is not supported by substantial evidence (DN 20 PageID # 1341-46). Plaintiff explains the ALJ failed to adequately develop the record with medical opinions addressing his physical/mental limitations and, as a result, she formulated the RFC based upon her own lay interpretation of the raw medical data (Id.).

Defendant asserts the RFC determination in Finding No. 5 is supported by substantial evidence in the record and comports with applicable law (DN 26 PageID #1360-64). Defendant argues the ALJ carefully and thoroughly analyzed the evidence in the record and gave proper weight to the medical/psychological opinions in the record (Id.).

The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546. The Administrative Law Judge makes this finding based on a consideration of medical source statements and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546. Thus, in making the residual functional capacity finding the Administrative Law Judge must necessarily assign weight to the medical source statements in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1527(c), 404.1529.

The Court will first address Plaintiff's claim that the ALJ failed to fully develop the record regarding his purported mental impairment and lapses in memory. At the second step, notwithstanding medical evidence in the record to the contrary (Tr. 260-68), the ALJ gave Plaintiff the benefit of the doubt and found he had a mild cognitive disorder that caused more than minimal limitations in his ability to perform basic work activities (Tr. 19). The ALJ also noted Plaintiff had been diagnosed with alcohol use disorder but found the impairment not severe (Tr. 20). At the third step, the ALJ noted neurocognitive testing by Joanne M. Schroeder, Psy.D., revealed normal attention, memory, concentration, and processing speed despite Plaintiff's complaints (Id. citing Tr. 21, 264-66). At the fourth step, the ALJ accurately summarized the reports discussing the May 2014 psychological examination and June 2014 neuropsychological evaluation by Dr. Schroeder (Tr. 24, 111-130, 260-68). These reports and evidence regarding Plaintiff's alcohol use disorder provide substantial evidence to support the ALJ's RFC determination that Plaintiff is "limited to routine, repetitive tasks which require only occasional interaction with supervisors and coworkers and no interaction with the general public in a job which is not fast paced" (Tr. 22).

What little medical evidence Plaintiff has cited to substantiate his assertions (s*ee* Tr. 330, 355, 375) is misguided because for the most part he is relying on his own subjective statements in the medical records. What the medical records do indicate is a diagnosis of "Alcohol Use Disorder, mild," and it imposes a mild limitation on his occupational and social functioning (Tr. 353, 355). The medical records also show Plaintiff was not diagnosed with Generalized Anxiety Disorder, Dysthymia, or a cognitive disorder (s*ee* Tr. 353-54). Notably, Plaintiff has not cited, and the Court has not found, any objective medical evidence in the record supporting Plaintiff's subjective complaints of ongoing lapses in memory. Further, Plaintiff acknowledges Dr. Schroeder's conclusion that there was no neurocognitive disorder and the current findings of normal cognition suggest if there was a prior diagnosis of mild cognitive disorder it was related to temporary factors (DN 20 PageID # 1342 citing Tr. 266). Additionally, in March 2017, the ALJ agreed to hold the record open to permit Plaintiff to submit the report from a recent neuropsychological evaluation (Tr. 68). While Plaintiff did not submit a report, he provided February 2017 notes concerning the neuropsychological evaluation with clinical findings that substantiate the ALJ's RFC determination (*see* Tr. 25, 1248-55). Viewing the totality of the medical evidence in the record, there are clinical findings, diagnostic opinions, and functional opinions from examining sources addressing Plaintiff's mental impairments, including his purported lapses in memory. In sum, the ALJ's findings regarding the limitations imposed by Plaintiff's purported mental impairment and lapses in memory are supported by substantial evidence in the record and comport with applicable law.

The Court will next address Plaintiff's claim that the ALJ failed to fully develop the record regarding his physical limitations before making the RFC determination. Plaintiff asserts that

7

State Agency medical consultant Dr. Irlandez prepared the only physical assessment in the record. Plaintiff contends the ALJ inappropriately relied on this assessment because Dr. Irlandez did not review all the medical evidence in the record and the ALJ failed to indicate she considered this before assigning weight to his opinion (Id.). For this reason, Plaintiff argues Dr. Irlandez's opinion does not constitute substantial evidence to support the ALJ's RFC determination that he can perform light work (Id.).

At the second step, the ALJ thoroughly reviewed the evidence in the record and determined that Plaintiff's history of cardiomyopathy with Class II congestive heart failure status post pacemaker placement and his neck and back pain with degenerative disc disease are severe impairments (Tr. 19). The ALJ also found Plaintiff's history of hernia repair times two did not constitute a severe impairment because the condition imposed no more than a slight or minimal limitation in his ability to perform basic work activities (Id.). The ALJ also indicated he considered this condition in assessing Plaintiff's RFC (Tr. 20). At the third step, the ALJ again considered the evidence in the record and concluded Plaintiff's impairments did not meet or equal Listing 1.04 (disorders of the spine) and Listing 4.02 (chronic heart failure) (Tr. 20). At the fourth step, the ALJ accurately summarized the evidence in the record regarding these physical impairments, including Plaintiff's subjective complaints regarding his symptoms and pain (Tr. 23-27). The ALJ noted that treating specialists classified Plaintiff's heart condition as New York Heart Association (NYHA) Functional Classification Class III from September 2014 through January 2015 and no more than NYHA Class II from April 2015 through at least February 2017 (Tr. 23). The ALJ observed that NYHA Class II indicates only mild symptoms with slight limitation during ordinary activities (Id.). The ALJ also recognized that Plaintiff's subjective

8

complaints about his back and neck conditions were inconsistent with the objective imaging and clinical findings by treating sources (Tr. 25-26).

The regulations provide that Administrative Law Judges "must consider" the medical findings of State Agency medical and psychological consultants because they "are highly qualified" physicians and psychologists as well as "experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2). When a State Agency medical consultant renders an opinion without having the opportunity to review the complete case record, the Administrative Law Judge must consider the subsequently submitted evidence in assessing how much weight to give that source's opinion. *See* Kepke v. Comm'r of Soc. Sec., 636 F. App'x 625, 632-33 (6th Cir. 2016); Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009).

Plaintiff is correct, Dr. Irlandez's opinion of March 3, 2015 is the only medical opinion in the record addressing Plaintiff's physical limitations (Tr. 90-95). The ALJ accurately summarized Dr. Irlandez's opinion and explained that she gave it "some weight as it is generally consistent with the record as a whole, such as NYHA Class II classification and largely normal examination findings" (Tr. 27 citing 249-388 and 1243-57). Notably, the ALJ's explanation cited medical evidence received after Dr. Irlandez gave his opinion (*see* Tr. 1243-57). Thus, the ALJ indicated that she did consider the subsequently submitted evidence in assessing how much weight to give Dr. Irlandez's opinion.

Plaintiff also accuses the ALJ of impermissibly interpreting raw medical data in functional terms when she made her RFC findings. Certainly, an Administrative Law Judge is not qualified to interpret raw medical data in functional terms. *See* Lennon v. Apfel, 191 F.Supp.2d 968, 977 (W.D. Tenn. 2001) (Administrative Law Judge made functional findings based on his own

9

interpretation of the treating physician's findings). But that is not what occurred here. The ALJ's decision indicates she had the benefit of Dr. Irlandez's medical opinion as well as the opinions of the treating cardiac specialists indicating Plaintiff's NYHA classification from September 2014 through January 2015 was Class III and from April 2015 through at least February 2017 it was Class II. In sum, the ALJ's RFC determination is supported by substantial evidence in the record and comports with applicable law.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

September 6, 2019

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:   Counsel